## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| NANCY MOSPANYUK, | |
| Plaintiff, | Civil Action No. 1:21-cv-04614-ELR-JKL |
| v. | |
| AXS MOBILITY CORPORATION, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT

Plaintiff Nancy Mospanyuk ("Plaintiff") files this Complaint against her former employer, Defendant AXS Mobility Corporation ("Defendant" or "AXS"). Plaintiff shows the Court as follows:

## INTRODUCTION

1.     This case concerns sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. ("Title VII") and Georgia state law.   Plaintiff worked for Defendant from approximately July 24, 2017, until she was forced to resign effective May 14, 2021, due to Defendant's retaliation against her for opposing sexual harassment and failure to take appropriate action to prevent the ongoing severe and pervasive sexual harassment which she was being subjected to from AXS Director Chris Schoenhofer,

1

who was employed by Defendant on and off during the relevant time period, and who is the son of Defendant's Chief Executive Officer ("CEO"), Jennifer Schoenhofer.   Defendant's retaliatory actions taken against Plaintiff after she opposed the sexual harassment included a demotion, reduction in compensation and benefits, retaliatory statements and treatment, and constructive discharge.

2.     Plaintiff asserts claims against Defendant for hostile work environment on the basis of sex in violation of Title VII (Count I), quid pro quo sexual harassment in violation of Title VII (Count II), and retaliation for engaging in the protected activity of opposing the discrimination in violation of Title VII (Count III).

3.     Plaintiff additionally asserts state law claims against Defendant for: negligently retaining and supervising Mr. Schoenhofer (Count IV); failure to prevent Mr. Schoenhofer's sexual harassment of Plaintiff (Count V); punitive damages pursuant to O.C.G.A § 51-12-5.1 (Count VI); and expenses of litigation, including attorneys' fees, pursuant to O.C.G.A. § 13-6-11 (Count VII).

4.     Plaintiff seeks all available relief under Title VII including lost wages and benefits, compensatory damages, punitive damages, prejudgment and post-judgement interest, and attorneys' fees and costs.  Plaintiff's state law claims also entitle her to seek compensatory damages and punitive damages, as well as expenses of litigation, including reasonable attorneys' fees.

2

## JURISDICTION AND VENUE

5.     This Court has federal-question jurisdiction over Plaintiff's Title VII claims pursuant to 28 U.S.C. § 1331.

6.     Pursuant to 28 U.S.C. § 1367, the Court has supplemental jurisdiction over Plaintiff's state law claims because such claims are so related to Plaintiff's Title VII claims that they form part of the same case or controversy.

7.     Pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3) and Local Rule 3.1(B)(3), venue is proper in this Court because the unlawful employment practices and tortious conduct described herein were committed within the Atlanta Division of the Northern District of Georgia.

## PARTIES

8.     Plaintiff is a citizen of the United States of America and a resident of the State of Georgia; she submits herself to the jurisdiction of this Court.

9.     Plaintiff was employed by Defendant from on or about July 24, 2017, until she was forced to resign effective May 14, 2021.  Plaintiff's last position prior to her retaliatory demotion and subsequent constructive discharge was Director of Field Production.

10.     Defendant is a Georgia for-profit corporation with its principal place of business at 8800 Roswell Road, Building A, Suite 265, Sandy Springs, Georgia 30350.

11.     Defendant may be served with process through its Registered Agent, CT Corporation System, at 289 S. Culver Street, Lawrenceville, Georgia 30046.

12.     At all relevant times, Defendant was an "employer" within the definition of Title VII and is governed thereby.

13.     At all relevant times, Plaintiff was Defendant's "employee" within the meaning of Title VII.

## ADMINISTRATIVE EXHAUSTION

14.     Plaintiff has satisfied all administrative prerequisites for bringing her Title VII claims in this Court.

15.     On June 23, 2021, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), in which she asserted her Title VII claims.

16.     On October 21, 2021, the EEOC issued a Notice of Right to Sue regarding Plaintiff's Charge of Discrimination.

17.     Plaintiff brings this suit within ninety (90) days of her receipt of the Notice of Right to Sue.

## **STATEMENT OF FACTS**

18.     Defendant employed Plaintiff from July 24, 2017, until she was forced to resign effective May 14, 2021.

19.     Prior to Defendant's retaliatory demotion of Plaintiff, her title was Director of Field Production.

20.     Defendant describes itself as providing "services to wireless carriers that assist in providing stable, top performing wireless networks across the United States."

21.     Plaintiff performed her job well.  During the course of her employment, Plaintiff was promoted eight (8) times and received eight (8) raises.

22.     Jennifer Schoenhofer is Defendant's CEO.

23.     Christopher Schoenhofer, who, on information and belief, is now a former Director of Defendant, is Ms. Schoenhofer's son.

24.     During the course of his employment, Mr. Schoenhofer repeatedly left the company, either through resignations or terminations, but Ms. Schoenhofer repeatedly rehired him.

25.     Many of Defendant's employees were fearful of Mr. Schoenhofer because of his erratic behavior.

26.   In approximately April or May 2020, Mr. Schoenhofer began subjecting Plaintiff to ongoing sexual harassment.

27.   Mr. Schoenhofer's harassment of Plaintiff included, but was not limited to: (1) sending text messages to Plaintiff's work cell phone at least once a week for a period of time, in which he expressed his physical attraction to Plaintiff and included YouTube links to songs used to express his interest in Plaintiff; (2) standing in the doorway of Plaintiff's office while holding and smelling a sweater that Plaintiff left in the kitchen; (3) leaning forward and bringing his lips extremely close to Plaintiff's, and as Plaintiff turned away stating, "I'm not going to touch your lips"; and (4) creating the email address "chris.loves.nancy69@gmail.com" which he used to send harassing emails including one that said, "Don't be stupid, Marry me!!!," and another inviting Plaintiff to come outside and asking for Plaintiff's personal cell number.

28.   Almost immediately after the harassment began, Plaintiff informed Mr. Schoenhofer that she was not interested in him.

29.   Plaintiff's opposition to Mr. Schoenhofer's sexual harassment constituted protected activity under Title VII.

30.   Ms. Schoenhofer became aware of Mr. Schoenhofer's harassment of and interest in Plaintiff shortly after it began.  Ms. Schoenhofer would comment on

Mr. Schoenhofer's harassing conduct to both Plaintiff and Mr. Schoenhofer. Although Ms. Schoenhofer would remind Mr. Schoenhofer that Plaintiff was not interested in him, Ms. Schoenhofer took no affirmative action to stop Mr. Schoenhofer's harassing conduct.

31.    In approximately February 2021, Defendant terminated Mr. Schoenhofer's employment for reasons unrelated to Plaintiff's complaints.

32.    After Mr. Schoenhofer left the office, Plaintiff informed Taiesha Skelton in Human Resources of the sexual harassment.  Ms. Skelton advised Plaintiff to file a restraining order.

33.    Plaintiff's February 2021 complaint to Ms. Skelton constituted protected activity under Title VII.

34.    Following Mr. Schoenhofer's termination, multiple employees expressed fear and concern that Mr. Schoenhofer would "shoot up" the office. Ms. Schoenhofer was well-aware of the employee concerns and casually informed Mr. Schoenhofer that, "employees [are] afraid [he] would shoot up the place." Defendant took no reasonable action to address the employee concerns and/or to ensure the safety of its employees.

35.    In approximately April 2021, Mr. Schoenhofer sent a text message to now-Director Chris Beale, asking him what Plaintiff was wearing.  At the time,

Mr. Beale was unaware of Mr. Schoenhofer's harassment of Plaintiff.  Once Plaintiff informed Mr. Beale, Mr. Beale immediately went to Ms. Schoenhofer to address the issue and to tell Mr. Schoenhofer to stop contacting Plaintiff.

36.    Despite Mr. Beale's request that Mr. Schoenhofer stop contacting Plaintiff, Mr. Schoenhofer contacted Plaintiff the following day.

37.    During the month of April 2021, Mr. Schoenhofer's harassment of Plaintiff escalated further.  Mr. Schoenhofer began sending Plaintiff messages and apologized for "pushing [himself] on [her]."  Plaintiff did not respond to this message.  Yet, every few days, Mr. Schoenhofer sent Plaintiff harassing messages with statements such as, "I change my mind, I want you, I love you, and I'm going to have you."  Plaintiff once more asked Mr. Schoenhofer to stop contacting her.

38.    On or about April 13, 2021, Mr. Schoenhofer sent Plaintiff a letter via UPS with a sticky note attached that said, "I'm coming for you soon." Mr. Schoenhofer addressed the letter as from "Your man, 6969 Porn Star Alley." Further, the letter uncomfortably outlined the things Mr. Schoenhofer missed about Plaintiff.  A few examples of the harassing text within the letter included: (1) "I miss seeing you in 3 dimensions"; (2) "I miss anticipating what kind of sexy outfit you're going to wear each day, and yes… they're all sexy to me"; and (3), "I miss seeing

your 4-runner hoping that one day it will be parked next to my truck in the driveway."

39.     On or about April 15, 2021, Plaintiff was informed that Defendant would, again, be rehiring Mr. Schoenhofer.

40.     On or about April 17, 2021, AXS Manager Mark Van Gelder informed Plaintiff that he would be filing a restraining order on her behalf after he observed the look of horror on Plaintiff's face after she received the letter from Mr. Schoenhofer.

41.     On or about April 19, 2021, Plaintiff directly expressed her opposition to Defendant rehiring Mr. Schoenhofer to Ms. Skelton.  Ms. Skelton assured Plaintiff that Mr. Schoenhofer would be working remotely and would have no direct contact with employees, including Plaintiff.

42.     Plaintiff's April 19, 2021 opposition to Mr. Schoenhofer's rehiring constituted protected activity under Title VII.

43.     Plaintiff was later made aware that Ms. Schoenhofer planned to get everyone "warmed up" to her son so that she could bring him back into the office.

44.     Plaintiff then showed Ms. Skelton the messages she had been receiving from Mr. Schoenhofer. Following this disclosure, Defendant informed

Mr. Schoenhofer that he would no longer be rehired. Ms. Skelton reiterated to Plaintiff that she should file a restraining order.

45.     Plaintiff's disclosures to Ms. Skelton constituted protected activity under Title VII.

46.     Shortly thereafter, Mr. Schoenhofer sent Plaintiff a message stating, "I'm excited to know my love for you will be recorded in court." Following this text, Plaintiff again complained to Ms. Skelton. Ms. Skelton immediately called Mr. Schoenhofer and informed him that he should stop contacting Plaintiff, or Plaintiff would file a restraining order.

47.     Mr. Schoenhofer angrily responded to Ms. Skelton by stating that he would, "beat her ass, slash her tires, and burn her house down." He further stated, "I know I have an obsession . . . if she's placing a restraining order on me, I might as well get whatever I can before I get served."

48.     Around this same time period, Ms. Schoenhofer asked Plaintiff to stop involving other employees—specifically, now-Director Beale—in her harassment complaints.

49.     Ms. Schoenhofer also informed Plaintiff that she always wanted her to be her daughter-in-law, and that Mr. Schoenhofer was only "being romantic."

50.     On or about April 20, 2021, the day after Defendant informed Mr. Schoenhofer that he would not be rehired, Plaintiff walked into a meeting in which Ms. Schoenhofer was speaking negatively about her to the Executive Team. During the meeting, Ms. Schoenhofer degraded and yelled at Plaintiff until she left the meeting visibly upset and crying.  The conduct that Ms. Schoenhofer subjected Plaintiff to was in retaliation for Plaintiff's opposition to Mr. Schoenhofer sexual harassment of her.

51.     Later that same day, Plaintiff verbally complained to Ms. Skelton. Ms. Skelton requested that Plaintiff put her complaint in writing.  Plaintiff complied and sent her complaint via email.

52.     Plaintiff's April 20, 2021 verbal and written complaints to Ms. Skelton constituted protected activity under Title VII.

53.     On or about April 21, 2021, Ms. Schoenhofer held a meeting with all members of the Executive Team and Plaintiff.   In retaliation for Plaintiff's opposition to the sexual harassment, Ms. Schoenhofer printed the email Plaintiff sent to Ms. Skelton the prior day, in which she was complaining about the Executive Team, and dissected Plaintiff's complaint line-by-line in the meeting, highlighting every point Plaintiff made in relation to each member of the Executive Team.

54.     On or about April 22, 2021, in retaliation for Plaintiff's opposition to her son's sexual harassment of her, and rejection of his advances, Ms. Schoenhofer demoted Plaintiff to Senior Market Scheduler, reduced Plaintiff's annual salary by $20,000, and stripped Plaintiff of her health benefits.

55.     Mr. Schoenhofer continued harassing Plaintiff with emails and text messages, and Defendant did nothing to prevent it.

56.     On or about April 29, 2021, after several weeks of promising that Plaintiff would be assigned an office, Ms. Schoenhofer gave the office space away to another employee.

57.     On or about April 30, 2021, Plaintiff was forced to resign due to the ongoing sexual harassment by Mr. Schoenhofer and the retaliation that Ms. Schoenhofer was subjecting her to due to Plaintiff's multiple complaints against Ms. Schoenhofer's son.

58.     On an almost daily basis following Plaintiff's resignation, Defendant pleaded with Plaintiff to stay by, among many things, (1) offering a 30–90 day leave of absence to take a break, (2) requesting that Plaintiff work until August 2021, and (3) requesting that Plaintiff work for an additional two (2) weeks beyond her resignation date.   Plaintiff declined each request and was transparent with Defendant, including Ms. Skelton and Director Jeff Evans, about her reasons for

declining, which she informed them was due to Mr. Schoenhofer's ongoing sexual harassment, Defendant's failure to prevent the harassment, and the retaliation following her opposition to the sexual harassment.

59.    Eventually, on May 5, 2021, Plaintiff offered Defendant the option that she would work remotely for a few hours per day as a dispatch employee. Defendant did not accept the offer. Again, several of Defendant's Executive Team attempted to convince Plaintiff to stay employed and Ms. Schoenhofer screamed that Plaintiff was her "daughter" and that Plaintiff could not leave.

60.    Ms. Schoenhofer attempted to further dissuade Plaintiff from leaving by claiming that it would be difficult for Plaintiff to find another job, and that Plaintiff would be unable to make as much money as she was making with Defendant.

61.    Defendant's persistent requests for Plaintiff to stay continued throughout that week and the next.

62.    On or about May 14, 2021, Ms. Schoenhofer, Ms. Skelton, and Mr. Evans accepted Plaintiff's offer to work remotely. As they were discussing the details, Plaintiff began receiving harassing emails from Mr. Schoenhofer.

63.    At that same time, Mr. Schoenhofer sat outside of the office, in the parking lot, with a sign that read, "I LOVE NANCY," set with a picnic and music.

64.    Defendant did not take action to stop or prevent Mr. Schoenhofer's sexual harassment of Plaintiff, or to remove him from Defendant's worksite.

65.    Due to Defendant's failure to stop the sexual harassment, Plaintiff immediately left the premises and informed Defendant that she was no longer interested in the remote dispatch position.

66.    Defendant's actions and/or inactions in subjecting Plaintiff to severe and/or pervasive harassment constituting a hostile work environment, subjecting Plaintiff to "quid pro quo" sexual harassment, and retaliating against Plaintiff for opposing the sexual harassment were willful, wanton, and/or in reckless disregard for Plaintiff's rights under Title VII.

67.    Defendant's actions and/or inactions, including the failure to prevent the sexual harassment, were specifically intended to harm Plaintiff.

68.    Defendant acted with malice and/or with reckless indifference to Plaintiff's federally-protected rights.

69.    The actions and inactions of Defendant showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

70.    Defendant acted with the specific intent to harm Plaintiff.

14

71.     Due to Defendant's violations of federal and state law, Plaintiff has incurred lost wages and benefits, and has suffered emotional distress, humiliation, inconvenience, mental anguish, and loss of enjoyment of life.

**COUNT I**
**Hostile Work Environment on the Basis of Sex in Violation of Title VII**

72.     Mr. Schoenhofer, a Director working for Defendant and the son of Defendant's CEO, subjected Plaintiff to severe and/or pervasive harassment based on her sex, which created a hostile work environment in violation of Title VII.

73.     Mr. Schoenhofer, among many things, sent Plaintiff harassing texts, letters, and emails on a weekly basis, in addition to sexually harassing Plaintiff in person on multiple occasions.

74.     Plaintiff repeatedly and expressly opposed Mr. Schoenhofer's conduct.

75.     Despite Plaintiff's repeated opposition, Mr. Schoenhofer refused to stop harassing Plaintiff.

76.     When Plaintiff did not acquiesce to Mr. Schoenhofer's sexual advances but instead opposed them by lodging complaints with management, Defendant took adverse employment actions against her, including a demotion, reduction in compensation and benefits, retaliatory statements, and constructive discharge.

77.     Defendant failed to take reasonable steps to prevent and to stop the sexual harassment and hostile work environment that Plaintiff was forced to endure.

78.     As a consequence of the hostile work environment that Plaintiff endured, she has suffered emotional distress, humiliation, inconvenience, mental anguish, and loss of enjoyment of life.

79.     The actions and inactions of Defendant in subjecting Plaintiff to a severe and/or pervasive sexual harassment constituting a hostile work environment were willful, wanton, and/or in reckless disregard for Plaintiff's rights under Title VII.

80.     Defendant acted with malice and/or reckless indifference to Plaintiff's Title VII rights.

81.     Plaintiff seeks all available relief under Title VII, including compensatory and punitive damages, prejudgment and post-judgement interest, and reasonable attorneys' fees and costs.

## COUNT II
### "Quid Pro Quo" Sexual Harassment in Violation of Title VII

82.     Defendant subjected Plaintiff to "quid pro quo" sexual harassment wherein her employment, and the terms and conditions of her employment, were made contingent upon her agreeing to engage in a sexual relationship with Mr. Schoenhofer.

83.   Mr. Schoenhofer, a Director working for Defendant and the son of Defendant's CEO, repeatedly propositioned Plaintiff to engage in a sexual relationship with him.

84.   Defendant conditioned Plaintiff's position, compensation, and benefits upon her acceptance of Mr. Schoenhofer's unwanted sexual advances.

85.   Defendant's CEO defended Mr. Schoenhofer's actions as "romantic" and told her that Defendant's CEO wanted Plaintiff to be her daughter-in-law.

86.   When Plaintiff did not acquiesce to Mr. Schoenhofer's sexual advances but instead opposed them, Defendant took adverse employment actions against her, including by demoting her position from Director of Field Production to Senior Market Scheduler, and by reducing her annual compensation by $20,000.

87.   As a consequence of the "quid pro quo" sexual harassment that she endured, Plaintiff has incurred lost wages and benefits, and has suffered emotional distress, humiliation, inconvenience, mental anguish, and loss of enjoyment of life.

88.   Defendant's actions and inactions in subjecting Plaintiff to "quid pro quo" sexual harassment were willful, wanton, and/or in reckless disregard for Plaintiff's rights under Title VII.

89.   Defendant acted with malice and/or with reckless indifference to Plaintiff's Title VII rights.

90.     Plaintiff seeks all available relief under Title VII, including lost wages and benefits, compensatory and punitive damages, prejudgment and post-judgement interest, and reasonable attorneys' fees and costs.

## COUNT III
## Retaliation in Violation of Title VII

91.     Plaintiff engaged in protected activity under Title VII by opposing Mr. Schoenhofer's frequent and unwanted sexual advances.

92.     Plaintiff also engaged in protected activity under Title VII by internally reporting Mr. Schoenhofer's sexual harassment to Ms. Schoenhofer and Human Resources.

93.     Defendant retaliated against Plaintiff for engaging in protected activity covered by Title VII, by among other things, (a) demoting Plaintiff, (b) reducing Plaintiff's compensation and benefits, (c) subjecting Plaintiff to retaliatory statements and treatment, and (d) constructively discharging Plaintiff's employment.

94.     As a consequence of the retaliation she experienced from Defendant, Plaintiff has incurred lost wages and benefits, and has suffered emotional distress, humiliation, inconvenience, mental anguish, and loss of enjoyment of life.

95.     The actions and inactions of Defendant in retaliating against Plaintiff for engaging in protected activity were willful, wanton, and/or in reckless disregard for Plaintiff's rights under Title VII.

96.     Defendant acted with malice and/or with reckless indifference to Plaintiff's Title VII rights.

97.     Plaintiff seeks all available damages under Title VII, including lost wages and benefits, compensatory and punitive damages, prejudgment and post-judgement interest, and reasonable attorneys' fees and costs.

## COUNT IV
## Negligent Retention and Supervision

98.     Defendant knew or should have known that Mr. Schoenhofer had the propensity to sexually harass females in the workplace, specifically Plaintiff. Nevertheless, Defendant continued to employ Mr. Schoenhofer and took no action to prevent his sexual harassment of Plaintiff, thereby creating a hostile work environment for Plaintiff by facilitating and allowing Mr. Schoenhofer's sexual harassment of Plaintiff to continue.

99.     The negligence of Defendant in retaining and supervising Mr. Schoenhofer allowed and enabled him to, *inter alia*, sexually harass Plaintiff.

100.   The actions and inactions of Defendant showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

101.   Defendant acted with the specific intent to harm Plaintiff.

102.   As a direct and proximate result of Defendant's negligence, Plaintiff suffered emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

103.   Plaintiff is entitled to recover compensatory and punitive damages against Defendant in an amount to be determined by the enlightened conscience of the jury at trial.

### COUNT V
### Negligent Failure to Prevent Sexual Harassment

104.   Defendant had an affirmative obligation to provide a workplace free of sexual harassment.

105.   Defendant knew, or in the exercise of reasonable care, should have known of Mr. Schoenhofer's propensity to sexually harass employees, and specifically his propensity to sexually harass Plaintiff.

106.   Defendant's failure to take action to prevent Mr. Schoenhofer from sexually harassing Plaintiff, allowed and enabled Mr. Schoenhofer to, *inter alia*, sexually harass Plaintiff in the workplace.

107.   The actions and inactions of Defendant showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

108.   Defendant acted with the specific intent to harm Plaintiff.

109.   As a direct and proximate result of Defendant's failure to provide a workplace free of sexual harassment, Plaintiff was subjected to sexual harassment and suffered emotional distress, humiliation, inconvenience, and loss of enjoyment of life.

110.   Plaintiff is entitled to recover compensatory and punitive damages against Defendant in an amount to be determined by the enlightened conscience of the jury at trial.

## COUNT VI
## Punitive Damages Pursuant to O.C.G.A. § 51-12-5.1

111.   Defendant's actions, as described herein, showed willful misconduct, malice, wantonness, oppression, and/or the entire want of care which would raise the presumption of conscious indifference to consequences.

112.   Defendant acted with the specific intent to harm Plaintiff.

113.   Plaintiff is entitled to unlimited punitive damages on her Georgia state law claims against Defendant, pursuant to O.C.G.A. § 52-12-5.1.

## COUNT VII
## Expenses of Litigation Pursuant to O.C.G.A § 13-6-11

114.   Defendant's tortious conduct as described herein was in bad faith and caused Plaintiff unnecessary trouble and expense.

115.   Pursuant to O.C.G.A. § 13-6-11, Defendant is liable for Plaintiff's expenses of litigation, including reasonable attorneys' fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and entry of judgment granting the following relief:

a)   A declaratory judgment that the practices of Defendant complained of herein are unlawful under Title VII;

b)   Full lost wages and benefits;

c)   Compensatory damages in an amount to be determined by the jury;

d)   Punitive damages in an amount to be determined by the jury;

e)   Attorneys' fees and costs;

f)   An award of prejudgment and post-judgment interest; and

g)   All other equitable and other further relief as this Court deems just and proper.

Respectfully submitted, this 5th day of November 2021.

*/s/ Justin M. Scott*
Justin M. Scott
Georgia Bar No. 557463
Michael D. Forrest
Georgia Bar No. 974300
SCOTT EMPLOYMENT LAW, P.C.
160 Clairemont Avenue, Suite 610

Decatur, Georgia 30030
Telephone: 678.780.4880
Facsimile: 478.575.2590
jscott@scottemploymentlaw.com
mforrest@scottemploymentlaw.com

Counsel for Plaintiff